## UNITED STATES et al. v. FLETCHER et al. (two cases).

### Nos. 1872, 1873.

District Court, D. Idaho, S. D.

Sept. 13, 1934.

234

See, also (D. C.) 8 F. Supp. 238.

John A. Carver, U. S. Dist. Atty., and E. H. Casterlin, Asst. U. S. Dist. Atty., of Boise, Idaho, J. Howard Marshall, of Washington, D. C., and Norman M. Littell, of Seattle, Wash., for plaintiffs.

Carey Nixon and Dean Driscoll, both of Boise, Idaho, and Clinton H. Hartson, Shorts & Denney, and McMicken, Ramsey, Rupp & Schweppe, all of Seattle, Wash., for defendants.

CAVANAH, District Judge.

As the bills in the two cases are similar and the same questions are presented on the motions to dismiss, they will be considered together and the conclusions reached will apply to both.

The United States and the Secretary of the Interior bring these actions by a bill in equity to enjoin the defendants from transporting, distributing, selling, or disposing in interstate commerce, petroleum or products thereof under the provisions of the National Industrial Recovery Act authorizing the President to prohibit transportation in interstate commerce of petroleum and products thereof, produced or withdrawn from storage in excess of the amount permitted to be produced or withdrawn from storage by any state law or valid regulation or order prescribed thereunder by any board, commission, or officer or other duly authorized agency of the state and the order of the President made in pursuance of the act.

The defendants have moved to dismiss and first challenge the jurisdiction of the court to enjoin the transportation in interstate commerce of petroleum or petroleum products produced or withdrawn from storage in excess of the amount provided for by the laws of the state of Texas or regulation or order prescribed thereunder. The argument is pressed that as section 9 (c) of the National Industrial Recovery Act, 15 USCA § 709 (c), is the only provision of the act granting authority to the President to make the order involved, it and the other provisions of the act do not invest jurisdiction in the courts of the United States to entertain a bill in equity to restrain violation of that provision of the act and the enforcement of the executive order of the President; section 3 (c) of the act (15 USCA § 703 (c) confers jurisdiction on the District Court of the United States to restrain violations of the codes of fair competition, as it provides that "the several district courts of the United States are hereby invested with jurisdiction to prevent and restrain violations of any code of fair competition approved under this chapter; and it shall be the duty of the several district attorneys of the United States, in their respective districts, under the direction of the Attorney General, to institute proceedings in equity to prevent and restrain such violations."

Section 9 (c), 15 USCA § 709 (c), provides that: "The President is authorized to prohibit the transportation in interstate and foreign commerce of petroleum and the products thereof produced or withdrawn from storage in excess of the amount permitted to be produced or withdrawn from storage by any State law or valid regulation or order prescribed thereunder, by any board, commission, officer, or other duly authorized agen-

cy of a State. Any violation of any order of the President issued under the provisions of this subsection shall be punishable by fine of not to exceed $1,000, or imprisonment for not to exceed six months, or both." Both of these provisions (sections 3 (f) and 9 (c) also provide for a penalty by fine and section 9 (c) by fine or imprisonment.

The United States District Courts are granted original jurisdiction in all suits of a civil nature at common law and in equity brought by the United States or by any officer thereof, authorized by law to sue. Section 41 (1), title 28 USCA. The inquiry then appears: Does this section apply and still give jurisdiction to the District Court of the United States in these actions, although section 3 (c) of the National Industrial Recovery Act (15 USCA § 703 (c) gives jurisdiction to restrain as to codes of fair competition mentioned in the act, and not as to the other provisions of the act.

When we come to consider the entire act, we find that it covers a variety of unrelated subject-matters. Sections 703–707, inclusive, of title 15, chapter 15, page 274, Supplement VII, U. S. Code (15 USCA §§ 703–707), relate only to the code-making process, while section 709 (section 9 (a–c) deals exclusively with oil regulations without any reference to the code-making process. These unrelated matters were, no doubt, considered aside and apart from each other by Congress, and as section 9 (c) provides both a penalty and prohibition in transporting illegal products, it would seem that those engaged in such transporting of illegal products could not be prohibited from doing so where such products are detected in the actual course of interstate commerce, unless by a court of equity. Therefore, if, by implication, the United States courts are divested of their general equity jurisdiction in restraining a violation of a portion of the act prohibiting the transporting of illegal products in interstate commerce, then the purpose of that portion of the act would be defeated, and no remedy would be afforded in its enforcement. Such interpretation as urged by the defendants runs counter to the settled principle that a court of equity may not be divested of jurisdiction by implication. Jurisdiction is granted in these cases under the general equity jurisdiction of the United States courts as provided for by section 41 (1), title 28 USCA.

The thought further urged that jurisdiction in equity does not exist to enforce, by injunction, a penal statute does not apply here because the statute does not constitute an effectual protection against the acts complained of and the enforcement of the act where the acts of the defendants are alleged to affect interstate commerce. Although the statute may prescribe a criminal penalty, yet if a violation of it constitutes acts or conduct which may be continuing or moving from one state to another, injunctive relief is granted to stop it or prevent its continuance, and the penalty statute would not be effectual for that purpose. Numerous acts are by statutes made criminal, and yet the courts have recognized equity jurisdiction under circumstances where their enforcement is not effectual.

Second. Attack is made on the bills, as not stating facts sufficient to constitute a cause of action under section 9 (c) of the National Industrial Recovery Act, and the executive order of the President, as it is asserted that no rule of the Texas Railroad Commission is pleaded, prohibiting the withdrawal of gasoline from storage in Texas or prohibiting the manufacture of gasoline from crude oil withdrawn in excess of the amount permitted or prohibiting the sale or transportation in Texas of gasoline so manufactured, as such gasoline, as distinguished from crude oil, is not contraband in Texas. As seen, section 9 (c) authorizes the President by order to prohibit the transportation in interstate commerce of petroleum or products thereof produced or withdrawn from storage in excess of the amount permitted by any state law or regulation or order prescribed thereunder, and the executive order of the President prohibits what section 9 (c) authorized him to do, so we must go to the bills to ascertain just what is alleged in that regard.

It is alleged that the National Industrial Recovery Act was approved June 16, 1933, in which the President was authorized to prohibit the transportation in interstate commerce of petroleum or products thereof, produced or withdrawn from storage in excess of the amount permitted to be produced or withdrawn from storage by any state law or valid regulation or order prescribed thereunder by any board, commission, officer, or other duly authorized agency of the state. That the president did, pursuant to that act, by Executive Order issued July 11, 1933 (15 USCA § 709 note), prohibit the transportation in interstate commerce of petroleum and products thereof produced in violation of the act. The executive order is set forth; that thereafter, on July 14, 1933 (15 USCA § 709 note), as authorized by the act, the President

delegated to the Secretary of Interior powers vested in him for the purpose of enforcing section 9 (c) of the act. That under the laws of the state of Texas which were enacted to prevent the waste of crude petroleum and conserve the natural resources of the state, the production of oil wells producing crude petroleum and producing wells in that state are now, and at all times referred to have been, restricted in their production to the daily allowable quantity fixed by the Railroad Commission of Texas for each well in the field based upon the well's potential production. Under the laws of the state of Texas, power to prescribe and determine the quotas of crude oil production, and amount of production for each field and well within the state, and to issue rules and regulations for the enforcement of the quotas, is vested in the Railroad Commission of the state. Acting pursuant to the Texas law, the Railroad Commission of that state has prescribed and determined the quotas of production for the fields and wells within the state and the Railroad Commission has issued rules and regulations for the enforcement of the quotas; that the rules and regulations so issued pursuant to the laws of Texas provide that in what is known as the East Texas Oil Field, no crude petroleum shall be withdrawn from storage on the property where produced without a tender or certificate of clearance from the constituted agent of the commission; that in the months of May, June, and July, 1934, the commission prescribed the total quotas of allowable production from the East Texas Oil Field, of the number of barrels there stated; that during the said months there was illegally produced crude petroleum in the East Texas Oil Field, represented by oil moved to the refineries in the field without tender or certificates of clearance as required by rules and regulations of the commission, in the number of barrels there stated. It is then alleged that the oil produced and withdrawn from storage in violation of the Texas law and the rules and regulations issued thereunder were received by refineries, named, and located in the East Texas Oil Field, and that some or all of the petroleum or products thereof illegally produced and withdrawn from storage was shipped from the refineries to tidewater terminal of the American Petroleum Company, located near Houston, Tex.; that some or all of the petroleum and the products thereof were at the tidewater terminal of the American Petroleum Company loaded aboard tanker steamship Papoose on or about July 31, 1934, in the amount of 70,000 barrels for transportation in interstate commerce from the state of Texas to Pacific Coast states and consigned to the defendant Fletcher Oil Company. It is further alleged that the petroleum and petroleum products on board the tanker Papoose bound for ports in the state of Washington and thence to Boise, Idaho, were produced in the East Texas Oil Field and refined there in violation of the laws of the state of Texas and regulations issued pursuant thereto, and that neither the owners, consignors, or consignees, nor any other person in connection therewith, ever received or have in their possession tenders or certificates of clearance covering the crude oil from which the cargo of the vessel was refined or manufactured. Further it is alleged that the movement of petroleum and petroleum products thus illegally produced, refined, and transported in interstate commerce constitutes an obstruction and burden to the free flow of interstate commerce which tends to diminish the amount thereof and materially interrupts and interferes with the declared purpose and policies of the National Industrial Recovery Act and rules and regulations promulgated pursuant thereto and is against public policy of the Congress of the United States and detrimental to the general welfare of the people of the United States; that the illegally produced, refined, and transported petroleum and petroleum products tend to increase the amount of interstate commerce between the state of Texas and other sovereign states and tend to decrease the flow of petroleum and petroleum products from other petroleum producing sovereign states to their sister states, particularly to the state of Idaho; that the illegal shipment and transportation in interstate commerce of petroleum and petroleum products produced and refined as alleged demoralized the natural normal flow of petroleum from other petroleum-producing sovereign states as it would naturally otherwise flow in interstate commerce, and in so doing affects the welfare of the people of the nation generally and particularly of the state through which the regularly produced and refined petroleum would flow, together with the welfare of the people interested in carriers from and to other petroleum producing sovereign states; that the United States constitutes one of the largest owners of oil lands and oil royalties in the world and has therefore a direct property interest in the stability of interstate commerce in petroleum products; that the cargo in tanker Papoose consists in whole or in part of petroleum or petroleum products produced or withdrawn from storage in ex-

cess of the amount permitted by the laws of Texas and valid regulations and orders prescribed thereunder, and that by reason of the commingling of the petroleum or petroleum products so illegally produced with other petroleum or petroleum products without the consent of the plaintiffs, the whole cargo of the vessel becomes and is an illegal transportation in interstate commerce; and it is further alleged that the plaintiffs have no plain, speedy, prompt, or adequate remedy at law, and·the movement and disposition of the cargo in the Pacific marketing areas will defeat the declared purpose of the National Industrial Recovery Act, and to the irreparable damage of the plaintiffs and the nation. Further it is alleged that the defendants, unless restrained, will discharge, receive, and distribute throughout the northwest, the petroleum and petroleum products so illegally produced, withdrawn, refined, and transported. Thus it will be observed that plaintiffs allege that under the rules and regulations of the commission of Texas, no crude petroleum produced in the East Texas Oil Field shall be withdrawn from storage on the property where produced without a certificate of clearance and that the quotas allowed were not observed, and the oil produced and withdrawn from storage was in violation of the laws of Texas and its rules and regulations, and that such petroleum was shipped to the refineries of the American Petroleum Company and boarded the tanker Papoose for transportation in interstate commerce from Texas to the Pacific Coast states and consigned to the defendant Fletcher Oil Company, and that the cargo of the tanker consists of petroleum and petroleum products which were withdrawn from storage in violation of the Texas laws and regulations and orders prescribed thereunder. The facts so alleged bring the cases under the National Industrial Recovery Act, the laws of Texas and the regulations and orders prescribed thereunder, and executive order of the President.

As to what is crude petroleum and the products thereof, and gasoline, are matters susceptible of proof, though we find, on the argument, a difference of opinion among counsel as to what they consist of; plaintiffs contending that gasoline is a product of petroleum and therefore an interpretation of the law and regulations should so be in order to give a proper administration of the act. If in fact such be the case, such interpretation should be adopted.

**■■ Third.** We approach the question of the constitutionality of section 9 (c) of the National Industrial Recovery Act and the executive order issued thereunder on July 11, 1933. It is claimed that under the Commerce Clause of the Constitution, Congress has no power to exclude from interstate commerce a harmless commodity such as petroleum and petroleum products merely because it is produced in violation of the state law. This question has been before the Supreme Court a number of times and the character of the particular product dealt with was the basis of the opinion on which each case rested; some of them have recognized the principle that Congress has under the Commerce Clause, power to prohibit transportation of an illegal product in interstate commerce in aid of prevention of violation of the state law. Compare, Clark Distilling Co. v. Western Maryland Ry. Co., 242 U. S. 311, 37 S. Ct. 180, 61 L. Ed. 326, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845; Bogle v. White (C. C. A.) 61 F.(2d) 930. Here the National Industrial Recovery Act, executive order, and the laws of Texas and the order issued thereunder are all in accord in prohibiting the doing of the acts alleged. There is no conflict whatever between the central government and the state of Texas. Section 9 (c) and the executive order are in aid to the state of Texas in prohibiting the transportation in interstate commerce of an illegal product. We must remember that we are not in these cases considering the code provisions of the act which may, in many instances, apply to matters wholly within the boundaries of the state, but the provision of section 9 (c) that relates solely to the transportation of illegal products in interstate commerce and one which it is claimed the production of which is in cases of allowable amounts to balance production with consumer demand, affects directly interstate commerce. One of the avowed purposes of the Recovery Act was "to remove obstructions to the free flow of interstate and foreign commerce which tend to diminish the amount thereof." Section 1, 15 USCA § 701. Activities which affect interstate commerce are within the power of the central government, and Congress having the right in the field of interstate commerce has power to legislate to prevent practices unfair and which obstruct the free flow of such commerce. It is alleged in the bills that the movement of petroleum and petroleum products so illegally produced, refined, and transported in interstate commerce is an obstruction and burden to the free flow of interstate commerce which tends to diminish the flow of petroleum and petroleum products from other petroleum-producing

sovereign states to their respective sister sovereign states, and in so doing affects the welfare of the people of the nation generally and particularly of the states through which regularly produced and refined petroleum would flow, and that the United States is directly interested in not permitting such to be done, as it is one of the largest owners of oil lands and oil royalties in the world. The act and regulations protect the stream of commerce from unfair practices and in production of a natural resource from overproduction and waste, no question but what the state of Texas has the power through its Legislature to regulate the use and disposal of one of its natural resources. The validity of the Texas law and regulation is not questioned. After that state has so acted, the central government now steps in and by the National Industrial Recovery Act attempts to protect that natural resource, which is one other states are also affected in its production and use, from waste, overproduction, and unfair practices when the commodity is transported in interstate commerce, under the circumstances alleged in the bills. Under these facts so alleged Congress has the power under the Commerce Clause to enact section 9 (c) of the act.

The delegation of power to the President to put into effect section 9 (c) is not an improper delegation of legislative power, for a review of statutes shows that such power has been upheld. Congress has declared that what, as alleged to have been done, may be prohibited when it affects interstate commerce and authorized, and by implication directed the President to by executive order prohibit such acts. Compare Ryan v. Amazon Petroleum Corporation (C. C. A.) 71 F.(2d) 1; Hampton, Jr., & Company v. United States, 276 U. S. 394, 48 S. Ct. 348, 72 L. Ed. 624; Field v. Clark, 143 U. S. 649, 12 S. Ct. 495, 36 L. Ed. 294. Under these allegations the court is required to take testimony in order to ascertain if the acts complained of do in fact tend to obstruct the free flow of interstate commerce in the manner alleged. So, under the allegations of the bills, section 9 (c) of the act and the Executive Order are constitutional. Ryan v. Amazon Petroleum Corporation, supra.

Fourth. As was said at the conclusion of the argument, the verification of the bills are sufficient where the United States and the Secretary of Interior have brought the suits.

In view of the conclusions reached, the motions to dismiss will be denied.