## UNITED STATES v. 65 SLOT MACHINES.

### Civ. No. 3473.

United States District Court
W. D. Louisiana, Lake Charles Division.
Feb. 27, 1952.

Wm. J. Fleniken, E. V. Boagni, Shreveport, La., for plaintiff.

Duke, Porterie & Davison, and Louis B. Porterie, all of New Orleans, La., Max R. Rosenfield and Elihu E. Berwald, Dallas, Tex., for claimant George Prock.

DAWKINS, Chief Judge.

By its libel filed October 11, 1951, plaintiff seized some sixty-five slot machines of the kind designed for use by the insertion of a coin and from which money or other things of value would be received, if the player was so fortunate, otherwise the coin was lost. The proceeding is brought pursuant to Public Law 906. 15 U. S.C.A. §§ 1171–1177.

Claiming the machines as owner, George Prock, operating as "General Distributing Company," appeared and moved to dismiss the complaint on the following grounds:

"a. The Congress of the United States was without authority to enact legislation prohibiting the interstate shipment of the machines and parts sought to be condemned and forfeited by this libel.

"b. Public Law 906, 81st Congress; 64 Stats. 1134, is unconstitutional in that such law does not apply uniformly to all shipments of alleged gambling devices and parts to and from all of the several States of the United States.

"c. Public Law 906, 81st Congress; 64 Stats. 1134, is unconstitutional for the reason that the same violates Amendment 5 of the Constitution of the United States, as amended, which provides that no person shall be deprived of property without due process of law, nor shall private property be taken without just compensation."

The gambling nature of the property seized is not disputed.

The first section of the statute defines a gambling device as used therein, while the second is quoted in full as follows: "It shall be unlawful knowingly to transport any gambling device to any place in a State, the District of Columbia, or a possession of the United States from any place outside of such State, the District of Columbia, or possession: Provided, That this section shall not apply to transportation of any gambling device to a place in any State which has enacted a law providing for the exemption of such State from the provisions of this section, or to a place in any subdivision of a State if the State in which such subdivision is located has enacted a law providing for the exemption of such subdivision from the provisions of this section.

"Nothing in this chapter shall be construed to interfere with or reduce the authority, or the existing interpretations of the authority, of the Federal Trade Commission under the Federal Trade Commission Act."

Section 3 requires manufacturers and dealers in such devices to register with the Attorney General, giving their names, addresses, etc., and to file monthly inventories and records of sales and deliveries for each place of business, describing by numbers specifically all such devices, and showing names, addresses, etc., of purchasers, names and addresses of transportation companies. Section 4 further requires that the shipping containers be plainly marked to show what they are, and that they bear the names and addresses of the consignees, the purpose being to provide easy means of identification and location. Sections 6 and 7 provide criminal penalties not to exceed $5000 fine and two years imprisonment, and for the seizure and forfeiture of such gambling devices or parts thereof to the United States.

Counsel for complainant concede that other statutes, such as the Webb-Kenyon Act and the Wilson Act, passed in 1913, 27 U.S.C.A. §§ 121, 122, dealing with intoxicating liquors; Ashurst-Sumners Act, 18 U.S.C. §§ 1761, 1762, excluding prison-made goods from interstate commerce; the Lacey Act of 1900, 16 U.S.C.A. § 668d, prohibiting shipment of birds or other game taken in violation of state laws; and see, also, the Connolly "Hot Oil" Act, 15 U.S.C.A. § 715 et seq., have been sustained. However, it is contended that those statutes were upheld solely because Congress took into consideration the situation as it was at their passage, whereas in this instance it went much further by prohibiting all shipments of gambling devices, parts, etc., from one state to another until and unless the latter first passed legislation permitting it to be done in whole or in part. Counsel say that the present law "* * * purports to and does * * * establish a national policy with respect to gambling devices, regardless of existing state law," for which reason "it constitutes a usurpation of state police power, which renders it unconstitutional." It is further argued, in effect, that this court can take notice of the fact that in one or more states, at the passage of the present law, such devices were legal, and in others there were varying provisions with respect thereto; and the attempt here to, in effect, repeal those measures and require an entirely new set-up in such states as may wish in whole or in part to be exempted from the slot machine law, amounts to a mere "Congressional fiat" and a total disregard of the states' rights to determine such matters for themselves, something that was never done in any of the preceding statutes.

The several grounds of attack in the motion upon the constitutionality of the present statute will be taken up in their order.

 a) The plenary power of control by Congress of interstate commerce pursuant to which it might prohibit entirely the shipment therein of devices such as those involved here, is so well settled that it scarcely requires the citation of authorities. All of the statutes enumerated earlier herein have been sustained by rulings of the courts, without deviation, and this counsel admits. Clark Distilling Co. v. Western Maryland Railway, 242 U.S. 311, 37 S.Ct. 180, 61 L.Ed. 326; Kentucky Whip & Collar Co. v. Illinois Central Railroad Co., 299 U.S. 334, 57 S.Ct. 277, 81 L.Ed. 270; Rupert v. United States, 8 Cir., 181 F. 87. It would seem to follow, therefore, that possessing complete power to exclude, it would necessarily follow that Congress might do something less and prescribe the conditions under which the use in interstate commerce might be permitted. This was the effect of what was done, as held in all of the cases involving the earlier laws cited above.

 b) As to the contention that the law does not apply uniformly, it is hard to see any distinction between this situation and what existed when these earlier laws were passed. Similar arguments were made and overruled. At that time state laws varied, but as an illustration, any state that was already dry, before being removed from the proscribed list, first had to change its laws and, in doing so, could prescribe the extent and manner of dealing with liquor after it came in, as well as the localities into which it might go and be lawfully handled. However, such state, the same as here, had to take the initiative. In this respect, the law, in its operation, was uniform throughout the nation. The only difference in the present case is that the slot machine act creates *absolute* uniformity in that, without action of the several states, its application is nationwide, but it does permit any-one of them to create conditions in which, by express terms, it may be exempted. The reason for thus, in effect, rubbing off the slate and starting anew is disclosed, it is thought, in the reports of the Committees, etc., cited by complainant's counsel themselves, i. e., the provisions of the various statutes in the several states were such that serious questions might arise as to the law of evidence, constitutional limitations, etc., that Congress thought best to avoid by beginning anew. It would seem to go without saying that, under its all embracing control, Congress may prescribe such conditions for the use of interstate commerce as it may see fit,

and in this instance that authority was not exceeded; nor does there appear to be any discrimination, for the right is open to every state to avail itself of the permissible provisions of this law.

 c) It is well recognized that there is no such property right in the subject matter of this statute which would prevent either the state, under its police power, from outlawing it, or the Congress, in the regulation of interstate commerce, from excluding it therefrom, even though it rendered the investment worthless. This federal statute, however, has no effect whatever upon any device or property which was in and continues to remain in a state; it simply anchors it there, insofar as interstate transportation is concerned, until the state changes the law.

It is felt, therefore, that there is no force in the claim that the statute violates the Fifth Amendment to the National Constitution by depriving claimant of his property without due process.

This motion to dismiss should be overruled.