**UNITED STATES of America,
Plaintiff,**

v.

**Gino AQUINO et al., Defendants.**

**Crim. No. 45878.**

United States District Court,
E. D. Michigan, S. D.

Jan. 12, 1972.

Arnold Shulman, William Jones, Sp. U. S. Attys., for plaintiff.

Neil H. Fink, Detroit Mich., for Clifford W. Terry, Marie Greuling and Kenneth J. Green.

James K. O'Malley, Pittsburgh, Pa., for Orlando Vigi, John and Joseph Nagel.

Donald L. Hobson, Detroit, Mich., for Phillip Zegrofus.

Arthur J. Koscinski, Detroit, Mich., for Arthur Benzi and Gino Aquino.

Robert W. Larin, Pontiac, Mich., for James Campagna, Jr., Anthony McCormick and Richard Campagna.

Ronald S. Weiner, Detroit, Mich., for Howard Dixon.

Watson A. Zdrodowski, Allen Park, Mich., for James Moyer.

Harry R. Bockoff, Detroit, Mich., for Harold Nicholson.

Sanford Rosenthal, Detroit, Mich., for Peter Aganes.

Henry Paniccia and James Stabile, in pro. per.

Morris H. Shillman, Lawrence Schreidell, Detroit, Mich., for Edward Sarkisian.

Stephen M. Losh, P. C., Warren, for Augie Sermo.

Richard E. Rosin, of Towner, Rosin and York, Mt. Clemens, Mich., for Anthony Soave.

## OPINION AND ORDER DENYING MOTION TO DISMISS

KENNEDY, District Judge.

Defendants have moved to dismiss the indictment on the grounds that the statute defining the offense with which they are charged, Title 18, United States Code, Section 1955, is un-constitutional. Three principal arguments have been presented in support of that conclusion:

(1) Congress has over-reached its authority granted under the Commerce Clause of the Constitution, Article I, Section 8, Clause 3, by declaring gambling activity of a purely local character to be a Federal offense; (2) the statute deprives defendants of the equal protection of the law by incorporating by reference State statutes defining "illegal gambling activities"; and (3) subsection (c) of the statute contains an impermissible presumption for the purpose of establishing probable cause for obtaining warrants for arrests, wire interceptions, and other searches and seizures.

Defendants' first argument is virtually identical to that raised by the respondents in the recent decision of the United States Supreme Court in Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971). In that case Title II of the Consumer Credit Protection Act, 18 U.S.C. § 891 et seq., prohibiting "extortionate credit transactions," was challenged as being un-constitutional on the grounds that it made completely intrastate loansharking activities a Federal offense. In rejecting this challenge, the Court first noted, citing United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609 (1941), that Congress may properly regulate a class of activities if the activities, as a class, have an effect on commerce among the states. In determining the validity of such legislation, the only function of the courts is to ascertain whether the particular class of activities is within the reach of Federal power, i. e., that it "affects" interstate commerce. An individual whose conduct falls within the prohibited class of activities may be exposed to the Federal regulation "without proof that the particular intrastate activity against which a sanction was laid had an effect on commerce." Perez v. United States, 402 U.S. at 152, 91 S. Ct. at 1360.

█ With regard to the class of activities prohibited by Section 1955, Congress has made the following findings:

The Congress finds that (1) organized crime in the United States is a highly sophisticated, diversified, and widespread activity that annually drains billions of dollars from America's economy by unlawful conduct and the illegal use of force, fraud, and corruption; (2) organized crime derives a major portion of its power through money obtained from such illegal endeavors as syndicated gambling, loan sharking, the theft and fencing of property, the importation and distribution of narcotics and other dangerous drugs, and other forms of social exploitation; (3) this money and power are increasingly used to infiltrate and corrupt legitimate business and labor unions and to subvert and corrupt our democratic processes; (4) organized crime activities in the United States weaken the stability of the Nation's economic system, harm innocent investors and competing organizations, interfere with free competition, seriously burden interstate and foreign commerce, threaten the domestic security, and undermine the general welfare of the Nation and its citizens; . . . . Pub.L. 91–452, Oct. 15, 1970, 84 Stat. 922.

While this congressional finding is stated only in general terms, as was stated by the Court in *Perez*, "We do . . . not . . . infer that Congress need make particularized findings in order to legislate." 402 U.S. at 156, 91 S.Ct. at 1362. This Court finds that large-scale gambling activities which are illegally carried on in a particular state could reasonably be found by Congress to fall within a class of activities which affect interstate commerce and thus may be properly regulated by Federal statute. Section 1955 is, therefore, a constitutional exercise of Congressional power.

By defining an "illegal gambling business" as any such business which is a violation of the laws of the state in which it is conducted, Section 1955 obviously does not contain a uniform prohibition. What is legal in Nevada may

be illegal in Michigan; activity conducted in one state may be a Federal offense while the same activity, conducted in another state, may violate no Federal statute. It is this consequence of Section 1955 which defendants contend constitutes a denial of equal protection of the law.

■ It is a "well established principle that Congress may incorporate by reference state criminal laws in federal criminal statutes." United States v. Curcio, 310 F.Supp. 351, 358 (D.Conn.1970). In United States v. Sharpnack, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958), the Supreme Court upheld the Assimilative Crimes Act, Title 18, United States Code, Section 13, which prohibits conduct on Federal enclaves which is prohibited by the criminal law of the state in which the enclave is located. The Court referred to this procedure of incorporating by reference State criminal statutes into Federal statutes as "a practical accommodation of the mechanics of the legislative functions of State and Nation in the field of police power where it is especially appropriate to make the federal regulation of local conduct conform to that already established by the State." *Id.* at 294, 78 S.Ct. at 296. Justices Douglas and Black, while dissenting from the majority, nevertheless observed, "Of course Congress can adopt as federal laws the laws of a State; and it often has done so. Even when it does so without any enumeration of the laws, it 'has acted as definitely as if it had repeated the words' used by the State, as Mr. Justice Holmes said in Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 167, 40 S.Ct. 438, 64 L.Ed. 834." 355 U.S. at 298, 78 S.Ct. 298. See also Kentucky Whip & Collar Co. v. Illinois Central Railroad Co., 299 U.S. 334, 57 S.Ct. 277, 81 L.Ed. 270 (1937), and Clark Distilling Co. v. Western Maryland Railroad Co., 242 U.S. 311, 37 S.Ct. 180, 61 L.Ed. 326 (1917), in which other federal statutes incorporating by reference state laws were upheld by the Supreme Court.

The Johnson Act, Title 15, United States Code, Section 1172, prohibits the transportation of gambling devices in interstate commerce, but provides that a state may exempt itself from the Act. In Nilva v. United States, 212 F.2d 115 (8th Cir. 1954), that Act was challenged as being un-constitutional. Plaintiffs contended that "it is mandatory upon Congress, if it chooses to act, to make a rule uniformly applicable to all states and in full force and effect in all states at all times." The court, however, characterized this argument as "fallacious". The court continued, at 119:

Congress is vested with the exclusive power to enact laws affecting or regulating interstate commerce. In doing so, however, it is not required that its laws shall be uniformly applicable to all states. Thus, in Currin v. Wallace, 306 U.S. 1, [59 S.Ct. 379, 83 L.Ed. 441,] the court said:

"We have repeatedly said that the power given to Congress to regulate interstate and foreign commerce is 'complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the Constitution.' Gibbons v. Ogden, 9 Wheat. 1, 196, 6 L.Ed. 23. To hold that Congress in establishing its regulation is restricted to the making of uniform rules would be to impose a limitation which the Constitution does not prescribe. There is no requirement of uniformity in connection with the commerce power (Art. 1, sec. 8, cl. 3, Const. U.S.C.A.) such as there is with respect to the power to lay duties, imposts and excises (Art. 1, sec. 8, cl. 1, Const. U.S.C.A.). Clark Distilling Co. v. Western Maryland R. Co., 242 U.S. 311, 327, 37 S.Ct. 180, 185, 61 L.Ed. 326 . . . ."

■ It appears that there is ample precedent for upholding federal statutes passed pursuant to the Commerce Clause which are not uniformly applicable throughout all the states. Section 1955, therefore, will not be held un-constitutional on that ground.

Defendants' third argument, dealing with the presumption created in subsection (c) of Section 1955, will not be considered on the merits at this time. Even if the Court were to agree that the presumption is impermissible, such a ruling would only affect the legality of the warrants, wire interceptions, etc., which may have resulted from the "probable cause" established by the presumption. Since the only issue presented on this motion is the constitutionality of Section 1955, this question, dealing only with probable cause, is not ripe for decision at this time.

For the reasons stated above, defendants' motion to dismiss on the grounds that the statute under which they are charged is un-constitutional is denied.