# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

## RIVARD v. STATE.

### Opinion delivered February 4, 1918.

1. STATUTES—RULE OF CONSTRUCTION—INTENTION OF THE LEGIS-
LATURE.—Statutes are to be construed by ascertaining the legislative
intention; and the intention of the Legislature must be inferred from
the plain meaning of the words used.

2. LIQUOR—BRINGING SAME INTO STATE FOR SALE—CARRIERS—RIGHT
OF INDIVIDUAL.—Act 13, Acts of 1917, forbids any carrier or its
agents to ship or to transport into, or to deliver in this State any
intoxicating liquors from any point without the State, when the said
liquors, or any of them, are intended by any person interested therein,
to be received, possessed or sold, or in any manner used except as
provided in § 17 of said act. (Sec. 17 provides that a priest or
minister may have alcohol shipped and delivered for sacramental
purposes, and it may be shipped to others for strictly medicinal
mechanical or purposes.)

3. LIQUOR—BRINGING INTO STATE FOR PERSONAL USE.—Act 13, § 1,
Acts of 1917, does not prohibit an individual from bringing intox-
icating liquor belonging to himself into this State for purposes of
sale after he has brought it in.

Appeal from Garland Circuit Court; *Scott Wood*,
Judge; reversed.

*A. Cobb* and *Richard M. Ryan,* for appellant.

It is no violation of law for a person to bring
liquor into this State for his own use. The court erred
in its instructions to the jury. The verdict is con-

trary to the law and the evidence. There was no evidence that defendant transported, shipped or delivered any liquor to any one, or that he sold or offered to sell any liquor. No violation of the act was proven.

*John D. Arbuckle,* Attorney General and *T. W. Campbell,* Assistant, for appellee.

The act prohibits the importation of liquor by any person in any manner whatsoever or for any purpose except the two purposes named in sec. 17. 69 So. 652; 219 U. S. 104; 169 *Id.* 263; 90 S. E. 402, 167 Pac. 133. See also, 165 Pac. 1177; 219 U. S. 111; 91 S. E. 561.

### STATEMENT OF FACTS.

The defendant was indicted under section 1 of Act 13 of the Acts of 1917, charged with the illegal transportation of intoxicating liquors into the State. The material facts are as follows:

The defendant lived in Hot Springs, in Garland County, Arkansas. He went to Memphis, Tennessee, and procured forty half-pint bottles full of whiskey. He put them in a grip and brought them to Garland County, Arkansas. There are other circumstances tending to show that he brought the whiskey into Garland County for the purpose of selling it.

Among other instructions the court gave to the jury the following: "1. The charge here against the defendant which you have to try is that he transported into this State certain alcoholic liquors which were to be possessed by him or sold contrary to law. Under the recent act known as the Bone Dry Law it is unlawful for any railroad company, express company or other common carrier or any officer, agent or employee or any of them, or any other person to ship or transport into this State any alcoholic liquor. Under that law as it has been construed it is not an offense for a man to bring on his person or in his personal baggage that he has along with him a reasonable quantity of liquor which he intends for his personal use. It is only an offense

when he brings it as an agent for somebody else or to be delivered to somebody else, or to be by him sold and delivered or given to somebody else. If he intends any of those things, that is to give it to somebody, or bring it in here as an agent of somebody else, or sell it out after brought here, he would be guilty of a violation of that act; but if he brought a reasonable quantity for his own use and that was his intention he would not be guilty of a violation of the act."

The jury returned a verdict of guilty, and from the judgment of conviction the defendant has duly prosecuted an appeal to this court.

HART, J., (after stating the facts). The principal contention of counsel for the defendant is that the court erred in telling the jury that it would be warranted in convicting the defendant if he brought the whiskey into the State for the purpose of selling it after he brought it here. The act in question has twenty-one sections but the defendant was indicted under section 1 of the act and it is claimed by the State that it would be a violation of its provisions for the defendant to bring intoxicating liquors into the State for the purpose of selling them after he had brought them here.

Section 1 is as follows: "That it shall be unlawful for any railroad company, express company, or other common carrier, or any officer, agent or employee of any of them, or any other person, to ship or to transport into, or to deliver in this State in any manner or by any means whatsoever, any alcoholic, vinous, malt, spirituous or fermented liquors, or any compound or preparation thereof, commonly called tonic bitters, or medicated liquors, from any other State, territory or district of the United States, or place now contiguous thereto, subject to the jurisdiction of the United States, or from any foreign country, to any person, firm or corporation within this State, when the said liquors, or any of them, are intended by any person interested therein to be received, possessed or sold, or in any manner used except as provided in Section 17."

Section 17 reads as follows: ''That nothing in this act shall make it unlawful (1) for any priest or minister of any religious denomination or sect to order and have shipped and delivered, wine for sacramental purposes; * * * (2) for any person, firm or institution to have shipped and delivered alcohol for strictly medicinal or mechanical purposes.''

(1) It may be stated at the outset that it has been often said that the ascertainment of the legislative intention is the pole star in statutory construction. This is true, but it is equally true that the intention of any legislation must be inferred from the plain meaning of the words used. The Legislature must be understood to mean what it has plainly expressed and this excludes construction. Mr. Endlich says: ''It has, therefore, been distinctly stated, from early times down to the present day, that judges are not to mould the language of statutes in order to meet an alleged convenience or an alleged equity; are not to be influenced by any notions of hardship, or of what in their view is right and reasonable or is prejudicial to society; are not to alter clear words, though the Legislature may not have contemplated the consequences of using them; are not to tamper with words for the purpose of giving them a construction which is 'supposed to be more consonant with justice' than their ordinary meaning.'' Endlich on the Interpretation of Statutes, sec. 4. The learned author also says that the departure from the clear language of a statute is, in effect, an assumption of legislative powers by the court. *Ib.*, sec. 8.

(2-3) Our attention has not been called to any decision construing a statute of similar import and after a somewhat careful search we have been unable to find any on the question involved here. For many years this State in common with other states has had laws on its statute books prohibiting and punishing the illegal sale of intoxicating liquors. It also has an act directed against the clandestine sale of intoxicating liquors under which any person owning, using or controlling any house in which he

caused or allowed intoxicating liquors to be sold or to be kept for sale was punished. In 1915, the Legislature passed an act prohibiting the issuance of liquor licenses in this State after January 1, 1916. Acts 1915, page 98. It also passed an Act making the carrying on of the sale of intoxicating liquors in violation of the laws of the State under certain conditions a public nuisance and providing for the abatement thereof. Acts of 1915, page 408. Until the passage by Congress of the Webb-Kenyon Act, the regulation of the transportation of liquors from one State into another had not received much attention from the various State Legislatures. The purpose of the Webb-Kenyon Act was to remove the protection of the interstate commerce clause of the Constitution of the United States from the interstate shipment of intoxicating liquors. The act was approved on March 1, 1913. It was construed by the Supreme Court of the United States in *Clark Distilling Co.* v. *Western Maryland Railway Company and State of West Virginia, Clark Distilling Company* v. *American Express Company and State of West Virginia,* 242 U. S. 311. The court held (quoting from the syllabus): "The act of Congress of March 1, 1913, 37 St. 699, known as the Webb-Kenyon Act, operated, if constitutional, to give effect to the above stated prohibitions of the West Virginia law in respect of liquors shipped into the State for personal use, by withdrawing from such shipments the immunity of interstate commerce, and, to forbid the shipment or transportation into the State of liquors intended to be received or possessed there for personal use contrary to such State prohibitions." In that case the court also held that the Act was a legitimate exercise of the power of Congress to regulate commerce and that it was not repugnant to the due process clause of the Fifth Amendment of the Constitution of the United States. In short the act renders applicable to interstate shipments of intoxicating liquors a State statute in regard thereto but adds nothing to the State regulation. The majority of the court is of the opinion that the proper construction to

give the statute according to its plain language, is that it forbids any carrier or its agents to ship or transport into or deliver in this State any intoxicating liquors from any point without the State to any person, firm, or corporation within the State, when the said liquors, or any of them, are intended by any person interested therein, to be received, possessed or sold, or in any manner used, except as provided in section 17. Section 17 allows any priest or minister to have shipped and delivered to him wine for sacramental purposes and any person may have alcohol shipped and delivered to him for strictly medicinal or mechanical purposes upon compliance by the carrier of the regulation prescribed by the section. There is nothing in the section which prohibits any person from bringing liquor into the State. The first section of the act is directed solely against the carrier or other person bringing liquor into the State for another person or delivering such liquor to another person. It can not be said that section 1 of the statute is violated when a person brings liquor into the State for the purpose of selling it after he has brought it here.

As we have already seen, we have other statutes directed against the illegal sale of liquor or the keeping of it for sale. It is manifest from the language used that the first section of the statute under consideration prohibits the transportation, shipment, carriage or delivery of intoxicating liquors in this State by any carrier or person to another. Most of the statutes regulating the transportation or delivery into a state of intoxicating liquors have some degree of similarity. Most of them doubtless recognizing the fact that liquor dealers in other States were using the express companies and other public carriers as means of distributing their liquors have passed a statute similar to our section 1. Other sections are usually included, allowing carriers to transport into or to deliver to a person within the State in a given time a limited quantity of intoxicating liquors for his own personal use or for the use of his family. Other States have forbidden entirely the introduction of intoxicating liquors

within their borders. Such States have enacted statutes not only prohibiting carriers or other persons from bringing liquors into the State or delivering them to persons there, but have forbidden persons from bringing into the State intoxicating liquors for their own personal use. In all the statutes which we have examined, when it is intended to prohibit any person from introducing liquors into the State, the language of the statute has expressly forbidden such persons from bringing intoxicating liquors into the State. It will be observed that the section uses the words, "to ship or to transport into, or to deliver in this State." It would seem that the words "to ship or to transport into" would include a delivery to the consignee by the initial carrier in person; and that the words "to deliver" were meant to place the ban of the statute upon any transfer company or person who should undertake to deliver to the consignee the intoxicants after they had arrived at the place of destination.

The concluding part of section 1 is for the purpose of harmonizing the various sections of the act and allowing the carrier or other person to transport or to deliver into the State, wine for sacramental purposes or alcohol for medicinal or mechanical purposes under the provisions of section 17 of the act. Other States have sections similar to that of section 1 of our statute and conclude with the words, "or other intoxicating liquors is intended by any person interested therein to be received, possessed, sold, or in any manner used in violation of any law of this State." Whether in the form used in our statute or in the form just quoted, the object of the concluding part of the section is to recognize the right of the carrier or other person to transport or to deliver intoxicating liquors in accordance with other provisions of the act. For instance, in several of the States there is another section which allows a person to have shipped, transported, or delivered, to himself in the State from a point without the State a limited quantity of intoxicating liquors within a given time. The concluding part of a section in the language just quoted or language of similar import is to

allow the transportation into and delivery in the State to a consignee as provided in other sections of the act. So, as we have already seen, the concluding part of section 1 of our statute allows carriers or other persons to transport into and to deliver in this State to the consignee liquors in accordance with section 17 of the act.

We think the construction we have placed upon the statute is borne out by the plain language used in it and we are of the opinion that a person who personally brings intoxicating liquors into the State for himself does not come within the prohibition of the statute. If he uses them in violation of the law or keeps them for the purpose of selling them after he has brought them into the State, there are other statutes, as we have already pointed out, dealing with this phase of the question.

It follows that the court erred in telling the jury that the defendant would be guilty if he brought the intoxicating liquors within the State for the purpose of selling them after he had brought them here.

For this error the judgment will be reversed and the cause remanded for a new trial.

HART, J., (on rehearing). For the sake of convenience, and in order to abbreviate the discussion of the argument made by the Attorney General in his brief on the motion for a rehearing, we will first set out the section of the act under consideration in a condensed form, retaining, however, all its essential features.

Section 1. That it shall be unlawful for any railroad company, etc., or any other person, to ship or to transport into or to deliver in this State in any manner or by any means whatsoever, any alcoholic liquors from any other State, etc., to any person, firm or corporation within this State, when the said liquors, or any of them, are intended by any person interested therein to be received, possessed or sold, or in any manner used except as provided in section 17.

It is insisted by the Attorney General that that portion of the section which declares it unlawful "to deliver in this State" is followed by the phrase, "to any person,

firm or corporation within this State," etc., but he earnestly insists that the phrase last quoted does not qualify the words, "to ship or to transport into." The Attorney General says this may be readily seen by attempting to follow the words, "to ship or to transport into" by the words "to any person," etc. The contention of the Attorney General is not sound. No matter what construction is placed upon the act, the words, "this State," must qualify or refer to the words "to ship or to transport into" as well as the words, "or to deliver in." The Legislature has no extra-territorial power to punish crime. In other words, it can not punish acts wholly performed beyond the limits of the State. Hence the words, "this State," must follow and qualify the words "to ship or to transport into" as well as the words "to deliver in." It is manifest that the words "to any person, firm or corporation within this State, when the said liquors or any of them, are intended by any person interested therein, to be received, possessed or sold, or in any manner used except as provided in section 17," are so connected that they relate to the same subject matter and must be used together. This is conceded, but it is insisted that these words only qualify or modify the words "to deliver in" and do not relate to or qualify the words "to ship or to transport into." If this construction be adopted we would have the anomalous condition of the same section of the statute making it unlawful for any railroad company or person to ship or transport into the State intoxicating liquors and at the same time making it lawful for a railroad company or person to deliver the liquors named in section 17 under the restrictions there prescribed. The construction we have placed upon the statute is borne out by our decision in *Wells Fargo & Co. Express* v. *State,* 130 Ark. 210, 197 S. W. 13. In that case we held that it was lawful for an express company to transport into the State the liquors named in section 17 of the act under the restrictions and for the purposes therein named. This decision could only have been reached by making the words,

"to any person * * * except as provided in section 17," relate to the words "to ship or transport into" as well as the words, "to deliver in." The court having held that alcohol could be legally transported and delivered into the State for the purposes mentioned in section 17, it follows that the words, "to ship or to transport into" or "to deliver in this State" are connected together and that the words following them qualify all of them and not merely the words "to deliver in." Looking at section 1 from its four corners, considering it in connection with the other provisions of the statute and applying the ordinary rules of construction thereto, we think it only applies to persons who carry for another, and that it does not make unlawful the personal transportation of an individual's own intoxicating liquors from another State into this State.

The Attorney General relies upon *Hendry* v. *State,* 93 S. E. (Ga.), 413, to support his motion for a rehearing. Hendry checked a trunk from Waycross, Ware County, Georgia, to Jacksonville, Florida. Sixteen gallons of whiskey were placed in the trunk at Jacksonville, and it was checked back to Waycross. The trunk arrived on the same train with Hendry. There was other testimony tending to show that Hendry intended to sell the whiskey. He was indicted under a statute in all essential respects similar to section 1 of our statute except that it concludes with the words, "in violation of any law of this State now in force or of this act," instead of the words, "except as provided in section 17." The court held that the act of the accused constituted a shipment of liquors in the State to be received or sold in violation of the laws of the State. This was in effect holding that the same person might be consignor and consignee and there was nothing whatever said in the opinion about the personal transportation into the State of intoxicating liquors. The court based its opinion on the view that the substantial words, "to any person when intended to be sold or in any manner used in violation of the law" related to the words, "to ship or to transport into" as well as the words "to deliver in this

State.'' That act was approved November 18, 1915, and contained thirty-one sections. Many of these sections show that the carrier might transport and deliver intoxicating liquors within the State under certain restrictions. One section permitted a limited shipment of whiskey, wine and beer for personal use; another provided for the shipment and delivery in the State of alcohol under certain restrictions. The carrier was also required to file a statement of the liquors brought in by it under section 1 of the act. The consignee was required to make an affidavit of a certain kind and character when the liquors were delivered to him; unlawful orders by consignees were forbidden; unlawful deliveries were specified; unlawful ordering and receiving was defined. One section prohibited delivery to or for a corporation, and expressed the general policy of the State to require, under nonprohibited conditions and in nonprohibited quantities, the liquors mentioned in section 1 of the act to be delivered to and possessed by individuals only, and for personal and domestic consumption.

Therefore, it can not be said that the Legislature intended by one clause of the section to absolutely prohibit the transportation of liquors into that State when so many other sections allowed its transportation into the State for certain purposes under certain restrictions of the law which must be complied with. It is evident that it was not supposed that the Georgia act made unlawful the personal transportation into the State of intoxicating liquors; for the Legislature was convened in special session in 1917, and passed an act to make it unlawful ''for any common carrier, corporation, firm or individual to transport, ship or carry, by any means whatsoever, with or without hire, or cost, the same to be done, from any point without this State to any point within the State, or from place to place within the State, whether intended for personal use or otherwise,'' any intoxicating liquors, etc., and the words ''to any person,'' etc., were left out of the statute.

As bearing on the question here presented and as tending to support the construction we have placed upon

the act under consideration, we refer to *People* v. *Bola* (Mich.), 163 N. W. 893, and *Bird* v. *State*, 131 Tenn. 518, 175 S. W. 554, Ann. Cas. 1917-A, 634. The Legislature of Michigan in 1913 made it unlawful for any person "to consign, ship, or transport in any manner whatsoever, or to deliver" intoxicating liquors to any person in any county where the sale of such liquors is prohibited or for any person residing in such prohibited territory to receive any such liquors unless labeled as required by the statute. Bola drove an automobile from the territory where the sale of liquor was prohibited into another part of the State where liquors could be legally purchased. He there purchased some liquors and without labeling them as required by the statute carried them to his home in the prohibited territory. He was indicted and convicted in the lower court under the section of the statute just referred to. The Supreme Court reversed the judgment and discharged the accused on the ground that he was neither consignor nor consignee of the intoxicating liquors and that the section of the statute had no application to him under the facts of the case.

The facts in the Tennessee case are that at its 1913* session, the Legislature passed two acts whose general purpose was to regulate the shipment of intoxicating liquors. The first act is called in the opinion chapter 3 and the later act is designated as chapter 1. The first act of chapter 3 undertook to deal with the shipments from one county to another. The first section of it reads as follows: "Section 1. Be it enacted by the General Assembly of the State of Tennessee, that it shall be unlawful for any person, firm or corporation to ship or convey whiskey, wine, ale, beer, and all other intoxicants, from one county to another county in this State."

The later act or chapter 1 deals with shipments from other States into the State, and also shipments from point to point in Tennessee regardless of county lines. Section 1 is as follows:

---

*Public Acts Tenn., 1913, pp. 659, 669.

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, that it shall be unlawful for any person, firm, or corporation to ship, carry, transport or convey any intoxicating liquor into this State, or from one point to another within this State, for the purpose of delivery, or to deliver the same to any person, firm, company or corporation within the State, except as hereinafter provided."

Indictments were returned against Bird and others for unlawful carrying, transporting, and conveying intoxicating beverages from one county to another within the State of Tennessee. The court held that the two acts relating to the same subject matter and being *in pari materia* should be harmonized and that effect should be given to the various provisions of each. In the application of this rule of construction, the court held that the effect of chapter 3 is to prohibit shipments of liquor to same extent only as such shipments are prohibited by chapter 1.

Section 2 provides for the venue in indictments returned under section 1 of chapter 3. It provides in effect that the circuit court in the county to which shipments are made, or in which deliveries of any intoxicants are made shall have jurisdiction to indict and try violators of the statute. In discussing this section, the court said:

"There is neither 'shipment' nor 'delivery' in case of one's carriage of one's own property. To ship or to deliver implies a change of custody. Either shipment or delivery necessitates a transfer of possession. Section 2, therefore, can have no application to personal transportation."

After further discussion the court said with regard to section 1 of chapter 1 the following:

"It is to be observed, further, that section 1 declares merely that it shall be unlawful to ship, carry, etc., intoxicating liquors for the purpose of delivery or to deliver the same. There is no prohibition against personal carriage."

After a discussion of the construction to be given to subsection 1 of section 9, the court said:

"It results, therefore that neither chapter 1 nor chapter 3 of the acts of the Second Extra Session of the Legislature of 1913 are effective to prevent an individual from carrying his own intoxicating liquors from one point in this State to another. The two acts do prohibit the shipment of liquor from one point in this State to another, and make it unlawful for any person, firm or corporation to transport for another liquor from one point in this State to another, or to make delivery to another, except under the conditions prescribed in the subsections of section 9 of chapter 1."

Thus it will be seen that these two cases tend to support the construction we have placed upon our own act. But the language of the act is plain and unambiguous and we rest the construction we have placed upon it upon the language used by the lawmakers in framing it. We are of the opinion that when the language used in the act is given its plain and ordinary meaning, that there is no prohibition of the personal transportation of an individual's own liquors from another State into this State.

Therefore the motion for rehearing will be denied.

HUMPHREYS, J., (dissenting). I do not differ from my colleagues on the canons for the construction of statutes, but differ from them as to the meaning of the statute in question under the rules of construction invoked. The construction placed upon section 1 of Act 13 of the Acts of 1917 by the majority, limits its application to carriers or persons who bring liquor into the State for a particular person or who deliver liquors to another in the State. In other words, the majority make delivery to some one or shipment or transportation to a particular person the gist of the offense. Under the majority construction, an individual can bring all the liquor he desires into the State for his own use or for purposes of sale without punishment as long as he keeps it in his possession. Such a construction, in my humble judgment, contravenes the plain language of the act. Shipment into this State or transportation into this State is just as much the gist of the offense as delivery. Each is clearly made

an offense under section 1 of the statute. Three offenses are provided for in said section, towit: To ship into the State, to transport into the State, or to deliver in this State to any person, firm or corporation within this State. It will be observed that the language is "to ship or transport into, or deliver to. * * *" The statement is in the alternative, and each act should be construed as a separate offense in order to give full effect to the statute. As I read it, the only exemption provided for is the right to ship, transport or deliver wine for sacramental purposes or alcohol for strictly medicinal or mechanical purposes. A reading of the whole act, and especially sections 8 and 9 of the act, convince me that the Legislature intended to pass a "bone dry" law for the State of Arkansas. The title of the act is in perfect accord with my construction and clearly imports an intention on the part of the Legislature to pass a "bone dry" law. An identical statute to the one under construction was passed by the State of Georgia in 1915. One is impelled to the belief, after reading the two statutes, that the Arkansas law was copied from the Georgia law. The Georgia statute was under construction in the case of *Hendry* v. *State,* 93 S. E. 413, and that court unanimously agreed upon the second and third divisions of the decision, which are as follows:

"2. The act of the Legislature approved November 18, 1915, in reference to intoxicating liquors (Laws Ga. Ex. Sess. 1915, p. 90), makes it illegal for individuals, although they are not carriers for hire, to ship or transport the prohibited liquors therein specified in quantities in excess of that allowed by law from another State into the State of Georgia."

"3. The court below did not err in charging the jury that 'no person in Georgia has the right now, under the law, to ship into this State any intoxicating liquors whatever for illegal sale, and if any person does so he violates the law.' "

Because of the striking similarity in the Georgia and Arkansas statutes, I regard the Georgia case as the best case authority on the question. It is more nearly in point

than any other case, being a construction of a statute from which our own was taken.

By analogy, my construction of this statute is supported by *Watkins* v. *State,* 165 Pac. 621, and *United States* v. *Chavez,* 228 U. S. 525. My construction does not run counter to any language used in the act.

For the reasons expressed, I register my dissent from the original opinion handed down by the majority, as well as the additional opinion of the majority on motion for rehearing.