(79 South. 332)

No. 23096.

STATE v. BLOCK.

In re BLOCK.

(June 29, 1918.)

*(Syllabus by the Court.)*

1. INTOXICATING LIQUORS ⬤⟳138—TRANSPORTATION OF LIQUOR — OFFENSE — CONSTRUCTION OF STATUTE.

Neither from its title nor its text can it be inferred that it is any part of the purpose of Act No. 23 of 1915 (Ex. Sess.) to make it unlawful for a citizen of another state to buy intoxicating liquor from a merchant in Louisiana, who is legally authorized to sell it, and carry the same, on his person or in his personal baggage, into such other state, there to be used by himself or his family, or otherwise disposed of as he may think proper. Whether such acts would contravene the laws of the state ad quem, or of the United States, is a question not here presented.

*(Additional Syllabus by Editorial Staff.)*

2. CRIMINAL LAW ⬤⟳1111(3) — BILL OF EXCEPTIONS—FACTS.

Where neither the statements per curiam, part of the trial bill of exceptions, nor the trial judge's return to the rule nisi challenged the statement of facts in the motion for a new trial made a part of the signed bill reserved to its overruling, the facts therein alleged are taken as conceded.

Ad. Block was convicted of unlawfully carrying and delivering intoxicating liquors, his motion in arrest of judgment was overruled, and he applies for certiorari and prohibition. Conviction and sentence annulled, and relator discharged.

Thomas W. Robertson, of Minden, for applicant.

### Statement of the Case.

' MONROE, C. J. Relator was prosecuted under a bill of information which charges:

That on or about March 28, 1918, he did "willfully and unlawfully carry and deliver intoxicating liquor from a point within the state of Louisiana into a territory of this state where the sale of intoxicating liquor is prohibited by law, without marking on the outside of the package containing such intoxicating liquor, where it can be plainly seen and read the words, 'This Package Contains Intoxicating Liquor,' and the quantity thereof, contrary to the form of the statute," etc.

Defendant filed, successively, a motion to quash the bill, on the grounds that it charges no offense known to the law, and that, if Act No. 23 of 1915 (Ex. Sess.) be relied on as creating an offense such as that charged, it is unconstitutional, since no such object is expressed in the title; a motion for a bill of particulars giving the name of the person to whom and the time and place when and where the alleged delivery of liquor was made, and whether with intent to violate the law, or for the defendant's personal use; a motion for new trial, in which it is alleged that defendant had purchased several quarts of whisky in Monroe, La., with a view of taking them, for his personal use, to his home in Garland City, Ark., that he was carrying them in a valise, or "grip," upon which there was no mark indicating its contents, that he left the train of the Vicksburg, Shreveport & Pacific Railroad at Sibley station, preparatory to boarding the train of the Louisiana & Arkansas Railroad, which was to carry him to his destination, and was there arrested, and detained, and his grip, with its contents,

seized by the sheriff of Webster parish, and that, though convicted upon these facts, he was guilty of no offense; a motion in arrest of judgment. And, his motions having been overruled, and sentence pronounced, from which no appeal lies, he applies to this court for certiorari and prohibition, in order that the validity of the same may be inquired into.

### Opinion.

This prosecution is founded upon Act 23 of 1915 (Ex. Sess.), the title of which reads, and the text of which (so far as here required) may be stated as follows:

"An act to regulate the shipment of intoxicating liquors into portions of this state where the sale of liquor is prohibited, either from within or without the state; to define the term intoxicating liquor as used in this act; to regulate the delivery of intoxicating liquors to consignees; to provide for the marking of packages containing intoxicating liquors; to provide for the making and preservation of records and documents of carriers and to provide penalties for the violation of the provision of this act."

Section 1 declares it unlawful for any person, firm, or corporation to deliver, or receive, for shipment, or carry or deliver, to any portion of this state where the sale of intoxicating liquors is prohibited, any such liquor, "except as provided for in this act."

Section 3 declares it unlawful for any railroad or express company, or other common carrier, or any person, firm, or corporation, to carry intoxicating liquor into any territory of this state where the sale of the same is prohibited, "for the purpose of delivering, or to deliver any such intoxicating liquors, to any person, company or corporation," without making and preserving a record of the same, consisting of a statement, in duplicate, one of which is to be sent to the clerk of the court of the parish or district from which, and the other to the clerk of the court of the parish or district to which, the liquor is shipped, and either of which may be used as evidence, "provided,

however, that when intoxicating liquors are shipped from within this state to a point without this state it shall not be necessary to furnish a statement," etc.

Section 4 makes it unlawful for any common carrier, corporation, person, etc., to deliver intoxicating liquor within any territory in this state where the sale of the same is prohibited, to any other person than the consignee, or his agent, authorized in writing, and without taking a written receipt therefor, which receipt is to be sent to the clerk of the court of the parish or district in which the delivery is made, to be used as evidence.

Section 6 declares:

"That it shall be unlawful for any common carrier, person, or corporation to ship, or receive for shipment, or deliver any intoxicating liquor from any point within this state into any territory of this state where the sale of intoxicating liquor is prohibited, * * * without marking on the outside of the package containing such intoxicating liquor, where it can be plainly seen and read, the words, 'This Package Contains Intoxicating Liquor,' and the quantity thereof."

Section 9:

" * * * That nothing in this act shall prohibit any common carrier, or any person, firm or corporation from receiving and shipping to any person, for his own use or that of his family, in one package and at one time, the following:
"1. Not less than one-fifth (⅕) of a gallon and not more than one gallon of intoxicating liquor in one shipment.
"2. Not more than one-fourth (¼) of a barrel of beer, or 8 gallons of draught beer or one cask of bottle beer containing 10 dozen pint bottles or 6 dozen quart bottles of beer.
"3. Not more than five (5) gallons of wine," etc.

[1] It will be seen from the foregoing, which sufficiently indicates the purpose and scope of the statute, that neither from its title nor its text can it be inferred that it was any part of that purpose to make it unlawful for a citizen of another state to buy intoxicating liquor from a merchant in Louisiana who is legally authorized to sell it, and to carry the same into such other state, there to be used by himself, or his family, or to be

143 La.—25

otherwise disposed of as he may think proper. Whether such acts would contravene the law of Arkansas, the "Webb-Kenyon Act" (Act Cong. March 1, 1913, c. 90, 37 Stat. 699 [U. S. Comp. St. 1916, § 8739]), or any other federal statute is a question which is not here presented for consideration. Counsel for relator have, however, provided us with a certified copy of the opinion and decree of the Supreme Court of Arkansas in a case entitled Rivard v. State, 202 S. W. 39, which, as we infer, has been quite recently decided, and in which, construing a statute of 1917, known as the "Bone Dry Law," containing provisions very similar to those contained in our act of 1915, that learned tribunal holds:

"That a person who personally brings intoxicating liquors into the state for himself does not come within the prohibition of the statute," and that, "if he uses them in violation of the law or keeps them for the purpose of selling them after he has brought them into the state, there are other statutes * * * dealing with this phase of the question."

[2] From which we conclude that, in doing as he is conceded to have been doing when arrested the relator herein would not have been amenable to the charge of violating, or intending to violate, the law of Arkansas, any more than he is amenable to the charge of violating the law of Louisiana. The charge itself, we may say, is within the statute upon which the state relies, and the motion to quash was therefore properly overruled; but neither the statements per curiam, made parts of the bills of exception, reserved on the trial, nor the return of the trial judge to the rule nisi herein issued pretend to challenge the statement of the facts as set forth in the motion for new trial, which motion was made part of the bill reserved to the overruling of the same, and which bill, having been signed by the judge, without such challenge, the facts therein alleged are taken to have been conceded; and, that being the case, we are of opinion that

relator has committed no offense and is entitled to his discharge.

It is therefore ordered that the conviction and sentence herein appealed from be annulled, and the relator discharged.