**W.D.C., INC., a Florida corporation d/b/a "Fantasy World," Plaintiff,**

**v.**

**CITY OF JACKSONVILLE, a Florida municipal corporation, Defendant.**

No. 88–32–Civ–J–12.

United States District Court, M.D. Florida, Jacksonville Division.

Feb. 21, 1989.

Richard L. Wilson, Orlando, Fla., for plaintiff.

Stephen M. Durden, and Steven E. Rohan, Asst. Counsel, Jacksonville, Fla., for defendant.

## ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT

MELTON, District Judge.

This cause is before the Court on two motions: (1) defendant's Motion for Summary Judgment, filed herein on April 21, 1988, to which plaintiff filed a response on May 26, 1988; and (2) plaintiff's Motion for Partial Summary Judgment, filed herein on August 8, 1988, to which defendant responded with a short memorandum in opposition thereto, filed herein on August 22, 1988. For the reasons stated in this order, the Court will deny plaintiff's motion, grant defendant's motion, and direct the entry of judgment for defendant.

## I. INTRODUCTION

Plaintiff, W.D.C., Inc. ("WDC"), operates a nightclub known as Fantasy World, at which adult entertainment is presented. Prior to October 1, 1987, WDC featured nonobscene topless dancing and served alcoholic beverages during those performances. WDC is duly licensed to serve alcoholic beverages to patrons for consumption on the premises.

Defendant, City of Jacksonville ("City"), is a political subdivision of the State of Florida with the responsibility and authority under state law to regulate various aspects of the commerce in intoxicating liquors within the boundaries of that portion of the state known as the Consolidated City of Jacksonville. Pursuant to that authority, the City enacted Ordinance 87–270–186 on April 1, 1987, with an effective date of October 1, 1987. This ordinance is codified in the City Municipal Code, §§ 150.601 —.610. The ordinance prohibits nude or seminude entertainment, defined by reference to the display of specified anatomical parts, at any commercial establishment at which alcoholic beverages are, or are available to be, sold, dispensed, consumed, possessed or offered for sale or consumption on the premises. The ordinance does not differentiate between establishments that serve exclusively alcoholic beverages produced wholly within the State of Florida (hereinafter "domestic alcohol"), and establishments that also serve alcoholic beverages produced outside the State of Florida but transported or imported into it (hereinafter "imported alcohol").

The City's adult entertainment ordinance effectively outlaws WDC's prior practice of serving alcoholic beverages and offering topless dancing as entertainment. However, WDC has stated its intention to purchase and serve only domestic alcohol while featuring nude or seminude entertainment. The City concedes for the purposes of the present motions that WDC can purchase and serve domestic alcohol exclusively. The City further concedes that WDC will offer entertainment prohibited by the adult entertainment ordinance while serving domestic alcohol, but the City states its intention to prosecute such actions as violations of the ordinance.

## II. PROCEDURAL HISTORY

Plaintiff commenced this suit on January 13, 1988, by filing a verified complaint alleging deprivation of first amendment rights in violation of 42 U.S.C. § 1983 and seeking a preliminary injunction against enforcement of the adult entertainment ordinance. This Court turned down that request. *See* Order Denying Application for Preliminary Injunction, entered Feb. 12, 1988, *appeal dismissed*, No. 88–3167 (11th Cir. Aug. 10, 1988). Thereafter, at the preliminary pretrial conference in this case, the parties agreed that the issue of liability could be determined in large on cross motions for summary judgment following a period of limited discovery. All motions and responses are now filed; WDC maintains that partial summary judgment may be entered in its favor and the City asserts that summary judgment as to the whole case may be entered in its favor. The Court agrees that the material facts are not in dispute and a decision may be rendered in the City's favor as a matter of law.

## III. PLAINTIFF'S LEGAL THEORY

This suit turns on a narrow issue of law involving the interpretation of the twenty-first amendment. An unbroken line of cases since 1972 affirms the authority of state governmental units to regulate nude and seminude entertainment within the confines of establishments which serve alcoholic beverages. *Newport v. Iacobucci*, 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986); *New York State Liquor Auth. v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981); *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). This authority finds root in the twenty-first amendment. *See Jorgenson v. Volusia County*, 846 F.2d 1350, 1351–52 (11th Cir.1988); *Krueger v. Pensacola*, 759 F.2d 851, 852 (11th Cir.1985). Consequently, the debate now focuses on *when* the twenty-first amendment confers the added presumption accorded state authority over public health, welfare, and morals that protects the regulation of nude entertainment in taverns from more searching constitutional scrutiny.

Interpretation of the twenty-first amendment cannot overlook three unique aspects of the amendment. First, it repeals the eighteenth amendment, *see* U.S. Const. amend. XXI, § 1, which had imposed a national prohibition on the sale of alcoholic beverages. Second, the twenty-first

amendment is the only change in the Constitution since the original ratification to be accomplished by conventions convened by the states solely for the purpose of ratification. *See generally* Brown, *The Ratification of the Twenty-first Amendment,* 29 Am.Poli.Sci.Rev. 1005 (1935). Third, and most clearly at issue, the amendment expressly commits control over the commerce in intoxicating liquors to the states. This last matter is accomplished in the following terms:

> The transportation or importation into any State, territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

U.S. Const. amend. XXI, § 2. WDC argues that the language regarding "transportation or importation into any State" limits the reach of the twenty-first amendment's added presumption to regulations governing establishments that serve imported alcohol. WDC maintains that application of the City's adult entertainment ordinance to an establishment that serves only domestic alcohol must be tested by the stricter standards applied to the regulation of nude entertainment when the twenty-first amendment cannot be invoked.

WDC's legal theory finds solace in Justice Stevens' dissent in *Iacobucci.* Continuing a critique of the Court's twenty-first amendment analysis which he began in *Bellanca,* Justice Stevens observed:

> One of the anomalies of the Court's approach is that Newport's ordinance would presumably be subject to vastly different scrutiny were a bar owner to sell only liquor that is produced within the State. Since the Twenty–First Amendment deals only with a State's power to regulate "transportation or importation into" the State, it would have no effect on a Kentucky bar selling Kentucky bourbon. In such a case, the full force of the First Amendment would apply.

*Iacobucci,* 479 U.S. at 102 n. 7, 107 S.Ct. at 389 n. 7 (Stevens, J., dissenting). Justice Stevens' dissent has gained credibility in the eyes of some because the Supreme Court's doctrine proclaimed in *LaRue, Bellanca,* and *Iacobucci* has failed to win the hearts and minds of the lower courts. Several state courts have expressed their reservations by developing state constitutional protections that limit state authority over nude entertainment. *E.g., Mickens v. City of Kodiak,* 640 P.2d 818 (Alaska 1982); *Commonwealth v. Sees,* 374 Mass. 532 373 N.E.2d 1151 (1978); *Bellanca v. New York State Liquor Auth.,* 54 N.Y.2d 228, 445 N.Y.S.2d 87, 429 N.E.2d 765 (1981) (on remand from 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357) *cert. denied,* 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982); *Sekne v. Portland,* 81 Or.App. 630, 726 P.2d 959, 963–64 (1986). Florida has declined to do so. *Daytona Beach v. Del Percio,* 476 So.2d 197 (Fla.1985). Federal courts, on the other hand, must follow precedent, albeit with reservations. *E.g., Geaneas v. Willets,* 1 Fla.L. Weekly Fed. D543, D548 n. 18 (M.D.Fla. Jan. 12, 1988) (Fawsett, J.) (applying majority analysis but endorsing Justice Stevens' dissent as "a persuasive critique of the entire course of Twenty-first Amendment analysis"). Judge Gonzalez perhaps best identified why Justice Stevens' dissent appears more intellectually appealing than the Supreme Court's majority analysis:

> It is clear that the Twenty-first Amendment returned a power to the States which the States had held for 132 years prior to the adoption of the Eighteenth Amendment. It remains unexplained, however, how the return of a power once held resulted in an increase of that power. This court is indeed puzzled as to how this increase in the general police powers came about. Would that the laws of physics were as flexible as the laws of the United States.

*International Food & Beverage Sys. v. Fort Lauderdale,* 664 F.Supp. 482, 484 (S.D.Fla.1987) (upholding zoning ordinance directed at adult entertainment establishments), *aff'd,* 838 F.2d 1220 (11th Cir.1988).

Despite the appeal of WDC's argument, as articulated by Justice Stevens, it is not consistent with the background and context of the twenty-first amendment, the precedent in the area of twenty-first amendment

interpretation, or the structure of the amendment itself. The Court will provide an analysis of WDC's legal theory against each of these interpretational guides.

## IV. THE BACKGROUND AND CONTEXT OF THE TWENTY–FIRST AMENDMENT

The unique aspects of the twenty-first amendment provide some guidance in its interpretation. An inquiry into the circumstances surrounding the amendment's drafting and ratification guides construction of the structure of the amendment's wording. This inquiry endorses a broad interpretation of the state's power to regulate nude entertainment in taverns. The nature of this power belies the distinction between the source of intoxicating liquors, whether they be domestic or imported alcohol.

The story of the twenty-first amendment is but one chapter in the unfinished book about the abuse of alcohol in America and its attendant consequences. The movement to impose prohibition began its ascendance in the late nineteenth century. The outright prohibition of the manufacture and sale of alcohol received judicial endorsement. *Mugler v. Kansas*, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887). When the State of Iowa sought to prohibit the importation of liquor into its territory without congressional authorization, however, the Supreme Court found the action violative of the commerce clause. *Leisy v. Hardin*, 135 U.S. 100, 124–25, 10 S.Ct. 681, 689–90, 34 L.Ed. 128 (1890). Congress responded with a grant of express authority to the states to regulate imported alcohol. This solution, known as the Wilson Act, 26 Stat. 313 (1890), initially survived constitutional scrutiny in *In re Rahrer*, 140 U.S. 545, 11 S.Ct. 865, 35 L.Ed. 572 (1891), but subsequent rulings by the Supreme Court narrowed the states' authority under the Wilson Act, *e.g.*, *Rhodes v. Iowa*, 170 U.S. 412, 18 S.Ct. 664, 42 L.Ed. 1088 (1898); *Scott v. Donald*, 165 U.S. 58, 17 S.Ct. 265, 41 L.Ed. 632 (1897). Of particular interest at present, the *Scott* Court held that the Wilson Act "was not intended to confer upon any state the power to discriminate injuriously against the products of other states in articles whose manufacture and use are not forbidden, and which are therefore the subjects of legitimate commerce." 165 U.S. at 100, 17 S.Ct. at 272. Similarly, the *Rhodes* decision construed quite narrowly state authority to enforce their prohibitions. Congress again responded, passing the Webb–Kenyon Act, 37 Stat. 699 (1913). The Supreme Court upheld the Webb–Kenyon Act's "larger degree of exertion of the identical power which was brought into play in" the Wilson Act. *Clark Distilling Co. v. Western Md. Ry.*, 242 U.S. 311, 330, 37 S.Ct. 180, 187, 61 L.Ed. 326 (1917). In doing so, the Court established an important principle of liquor regulation, namely, that regulations of liquor would be sustained although the same kind of regulation might offend the Constitution if applied to other subjects. *See id.* at 332, 37 S.Ct. at 187–88. The reason for this, the Court proposed, is

> the principle which, after all, dominates and controls the question here presented; that is, the subject regulated and the extreme power to which that subject may be subjected.... [T]he exceptional nature of the subject here regulated is the basis upon which the exceptional power exerted must rest, and affords no ground for any fear that such power may be constitutionally extended to things which it may not, consistently with the guarantees of the Constitution, embrace.

*Id.* Within a year of the *Clark Distilling* decision, uncertainty over the willingness of the Supreme Court to continue to uphold the validity of the Webb–Kenyon Act prompted proposal to the states of what became the eighteenth amendment.

Interestingly, the concerns of the prohibitionists did not focus solely on drunkenness; rather, their mission encompassed the general corruption of society that accompanied alcohol use and saloons. "The intemperance of the saloon was the least objection to it. It was the breeding place of crime and immorality and vulgarity and profanity of every description." 76 Cong. Rec. 4219 (1933) (remarks of Sen. Glass). The equivalent of topless entertainment of

the day met with the wrath of the temperance movement. "In the 1890s, local women successfully campaigned for the removal of a painting depicting a nude from the bar of a Cincinnati restaurant, and the [Women's Christian Temperance Union] kept the sculpture *Bacchante and Infant* from being displayed at the Boston Public Library." J. D'Emilio & E. Freedman, *Intimate Matters: A History of Sexuality in America* 160 (1988). The period of national prohibition, then, can be understood as an attempt to control many social problems, among which can be listed the combination of alcohol and nude entertainment.

The retreat from prohibition was not made without some hesitance. The political parties addressed the matter in their party platforms in 1932. While both major parties endorsed a constitutional amendment to repeal prohibition, the Republican platform made it clear that the amendment should empower the states to "safeguard our citizens everywhere from the return of the saloon and attendant abuses" and the Democratic platform urged that the amendment "actually promote temperance, effectively prevent the return of the saloon, and bring the liquor traffic into the open under complete supervision by the States." *See* 76 Cong.Rec. 4144 (1933) (quoted in remarks of Sen. Wagner). To these ends the twenty-first amendment was drafted.

The wording of the first two sections of the twenty-first amendment comes from the Senate Judiciary Committee proposal. Speaking on behalf of that committee, Senator Blaine explained that "[s]ection 1 is a straight, outright repeal of the eighteenth amendment ... [which] will entirely eliminate the eighteenth amendment from the Constitution." *Id.* at 4140. Concerning section 2, Senator Blaine described its purpose to be a guarantee to the states that they would possess the power to regulate commerce respecting intoxicating liquor. *Id.* at 4140–41. "[I]n agreeing to that section I think the committee was unanimous that the language used would effectuate the purpose that is obviously designed by section 2." *Id.* at 4140. Through the addition of power over the commerce in intoxicating liquors, "the State is not surrendering any power that it possesses, but rather, by reason of this provision, in effect acquires powers that it has not at this time." *Id.* at 4141.

■ Herein lies the confusion raised by WDC's argument. Prior to prohibition, the states possessed extraordinary police power over alcohol. *See Clark Distributing*, 242 U.S. at 332, 37 S.Ct. at 187 (passage previously quoted). The twenty-first amendment returned this power to the states and added power over interstate commerce not previously possessed. *See, e.g.,* 76 Cong.Rec. 4170–72 (1933) (remarks of Sen. Borah) (§ 2 constitutionalizes doctrine that upheld validity of Webb–Kenyon Act). Thus, when section 2 refers to the "transportation or importation into any State ... for delivery or use therein of intoxicating liquors, in violation of the laws thereof," it presupposes the extraordinary power of the states to pass laws regulating use within their borders. *See Castlewood Int'l Corp. v. Simon*, 596 F.2d 638, 642 (5th Cir.1979) (applying *Clark Distributing* principle of extraordinary police powers in liquor regulation), *vacated and remanded*, 446 U.S. 949, 100 S.Ct. 2914, 64 L.Ed.2d 806 (1980), *opinion reinstated following remand*, 626 F.2d 1200, 1201 (5th Cir.1980).* WDC's error lies in focusing on the language of section 2 to the exclusion of the changes wrought by section 1, which are expressly recognized and reaffirmed in section 2.

The framers of the twenty-first amendment clearly recognized this state of affairs. Perhaps the most significant debate over the Senate Judiciary Committee proposal centered on its section 3, a provision vesting concurrent power in Congress "to regulate or prohibit the sale of intoxicating liquors to be drunk on the premises where sold." *See id.* at 4138 (text of S.J.Res. 211,

---

* Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent upon this Court, *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), absent a clear, contrary holding by the Supreme Court, *United States v. Andrews*, 850 F.2d 1557, 1561 n. 13 (11th Cir.1988) (en banc).

§ 3). Of course, the mere fact that the proposal refers to the *concurrent* power strongly evidences the extent of state authority on the matter. *See id.* at 4155 (remarks of Sen. Walsh) (states already possessed power to regulate or prohibit saloon that proposal would grant to Congress). In addition, the debate that ultimately led to the rejection of the proposed section 3 illuminates the perceived allocation of state authority achieved through the twenty-first amendment.

The support for the proposed section 3 rested largely among prohibitionists who sought to retain a back door for federal regulation of saloons. However, the speakers on both sides agreed that the amendment should guard against the return of the evils of tavern. The disagreement lay in a dispute over methods. The supporters of the concurrent congressional power proposal maintained that the implied threat of federal intervention would assure that the saloon did not return. *E.g., id.* at 4155 (remarks of Sen. Walsh); *id.* at 4173 (remarks. of Sen. Hastings); *id.* at 4175–76 (remarks of Sen. Norris). The proposal's opponents stressed the unworkability of federal control, *e.g., id.* at 4147 (remarks of Sen. Wagner), the invasion of the states' prerogative to control liquor traffic, *e.g., id.* at 4177 (remarks of Sen. Black), and, importantly, the ability of the states to control the saloon under the amendment as drafted without the concurrent congressional power section, *e.g., id.* at 4225 (remarks of Sen. Swanson); *id.* (remarks of Sen. Robinson).

The defeat of the concurrent congressional power proposal signifies the expansiveness with which state power under the twenty-first amendment should be construed. *See Castlewood Int'l,* 596 F.2d at 642 (examining § 3 debate to reach like conclusion). No doubt can be entertained as to the belief that, following ratification of the twenty-first amendment, the states would hold the power to regulate the saloon in order to mitigate its attendant evils. Absent compelling language to the contrary, this Court should not hobble the twenty-first amendment with a construction that imposes an unnatural restriction on the states' authority to regulate in this area. WDC's legal theory does not survive scrutiny in this light.

This excursion through the background and context of the twenty-first amendment should not be confused with a blind allegiance to a notion of legislative intent. Although some Supreme Court decision have expressed reliance on an original intent for the twenty-first amendment, *e.g., Craig v. Boren,* 429 U.S. 190, 205–06, 97 S.Ct. 451, 461–62, 50 L.Ed.2d 397 (1976), more recently the Court oft repeats its hesitance to inquire into the congressional and ratification debates surrounding the adoption of the amendment, *e.g., 324 Liquor Corp. v. Duffy,* 479 U.S. 335, 346–47 n. 10, 107 S.Ct. 720, 727 n. 10, 93 L.Ed.2d 667 (1987); *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 274–75, 104 S.Ct. 3049, 3056–57, 82 L.Ed.2d 200 (1984); *California Retail Liquor Dealer's Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 107 & n. 10, 100 S.Ct. 937, 944 & n. 10, 63 L.Ed.2d 233 (1980). This is understandable in the context of those specific cases, which decided commerce clause conflicts with state authority asserted under the twenty-first amendment, given that some aspects of the Senate debate appear contradictory as to the scope of state authority over interstate commerce, *see 324 Liquor Corp.,* 479 U.S. at 346 n. 10, 107 S.Ct. at 727 n. 10, and that the ratification process was fragmented by the unique process of special conventions, *see Midcal Aluminum,* 445 U.S. at 107 n. 10, 100 S.Ct. at 944 n. 10. Nonetheless, it is noteworthy that several members of the Court have advocated a renewed interest in the historical circumstances surrounding the twenty-first amendment. *See South Dakota v. Dole,* 483 U.S. 203, 107 S.Ct. 2793, 2799, 97 L.Ed.2d 171 (1987) (Brennan, J., dissenting); *324 Liquor Corp.,* 479 U.S. at 352–60, 107 S.Ct. at 730–34 (O'Connor, J., dissenting, joined by Rehnquist, C.J.).

It should be understood that this Court accepts the scope of state authority delineated in *LaRue* and its progeny. The task is to determine if the source of this authority lends itself to the distinctions drawn by WDC. The background to and context of

the twenty-first amendment indicate that the amendment must be read as a whole, against early case law on the issue of state power over the liquor trade, and such a reading compels rejection of WDC's legal theory.

## V. PRECEDENT INVOLVING THE TWENTY–FIRST AMENDMENT

Particularly in the light of the foregoing, an easy answer to WDC's legal theory is that Justice Stevens' position does not command a majority of the Supreme Court. *See Geaneas,* 1 Fla.L. Weekly Fed. at D548 n. 18. Indeed, the footnote in *Iacobucci* is not the first instance for which the Justice's dissenting views have been raised in examining the scope of the twenty-first amendment. When Justice Stevens' dissent in *Bellanca* read the majority analysis to imply that "a State may ban any protected activity on such premises, no matter how innocuous or, more importantly, how clearly protected," 452 U.S. at 719, 101 S.Ct. at 2602, the Seventh Circuit Court of Appeals declined to "read the opinion so broadly. More than a single sentence quoted by Justice Stevens would be necessary to persuade us that the Supreme Court would allow the defendants to yank a liquor license because the licensee allowed the reading of the *New York Times* in his bar." *Reed v. Village of Shorewood,* 704 F.2d 943, 950–51 (7th Cir.1983). This Court agrees that it is a hazardous enterprise to view the meaning of Supreme Court doctrine through the lens of the dissenting opinion. Justice Stevens intends and presents a critique of the Supreme Court's doctrine, not an interpretation. The hypothetically anomalous result of the logical extension of the reasoning underlying a doctrine, recognized in logic as an argument in the form of *reductio ad absurdum,* does not necessarily define its contours. Consequently, this Court cannot accept Justice Stevens' dissent in *Iacobucci* as an authoritative interpretation of the doctrine in this area. Significantly, the cases addressing this issue that have been brought to this Court's attention have rejected WDC's argument. *Geaneas,* 1 Fla. L. Weekly Fed. at D546; *G.P.Y., Inc. v.*

*City of Jacksonville,* Case No. 87–792–Civ–J–16, order entered Oct. 5, 1988, slip op. at 5–6, *appeal docketed,* 873 F.2d 298 (11th Cir.1989).

WDC presses its cause with citation to several Supreme Court cases decided shortly after ratification of the twenty-first amendment. *E.g., Ziffrin, Inc. v. Reeves,* 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128 (1939); *State Bd. of Equalization v. Young's Market,* 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38 (1936). WDC's interpretation of these cases, however, ignores the gloss they have acquired in recent years. In *Midcal Aluminum,* the Court reconciled the earlier cases, noting that state control over transportation or importation of liquor into its territory "logically entails considerable regulatory power not strictly limited to importing and transporting alcohol." *Id.* 445 U.S. at 107, 100 S.Ct. at 944. The Court later dismissed some aspects of the earlier case law as "broad language" that lacks current relevance. *See Bacchus Imports,* 468 U.S. at 274–75, 104 S.Ct. at 3056–57.

If commerce clause cases provide a useful guide, and some justices have suggested that the Court has limited their usefulness in this area by segregating nude entertainment cases from the commerce clause cases, *see 324 Liquor Corp.,* 479 U.S. at 352–53, 107 S.Ct. at 730 (O'Connor, J., dissenting); *Iacobucci,* 479 U.S. at 98–99, 107 S.Ct. at 387 (Stevens, J., dissenting), the emphasis lies in a pragmatic effort to harmonize state and federal powers. *Bacchus Imports,* 468 U.S. at 274–75, 104 S.Ct. at 3056–57. Greater deference is due state laws "enacted to combat the perceived evils of an unrestricted traffic in liquor." *Id.* at 276, 104 S.Ct. at 3058. Thus, interpretation of the twenty-first amendment may extend a pragmatic penumbra of authority over domestic alcohol in order to protect a state's power to regulate imported alcohol, much as Congress possesses authority over commerce wholly within a state in order to protect its authority over interstate commerce. *Cf. Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942).

Harmonizing federal and state powers in this area has another dimension. WDC concedes, and precedent establishes, a state's authority over nude entertainment, at least if imported alcohol is involved. Yet precedent also establishes that a state's regulation of the liquor traffic may not specially privilege the domestic alcohol industry. *E.g.*, *Bacchus Imports*, 468 U.S. at 276, 104 S.Ct. at 3058. WDC's legal theory creates a paradox wherein a state may not usually privilege the domestic alcohol industry, excepting for restrictions on nude entertainment, when an advantage to domestic alcohol would become a matter of constitutional privilege. This paradox is undesirable and unnecessary. The federal and state powers work in harmony if the implication of authority over domestic alcohol is extended from the unquestioned authority over imported alcohol.

■ By way of final comment on twenty-first amendment precedent, the Court observes a fundamental flaw in the view taken of *LaRue* and its progeny by WDC's legal theory. This view treats section 2 of the twenty-first amendment as creating an exception to the first amendment, hence the focus on the source of the liquor. Some language in *Bellanca* can be read in this fashion. *E.g.*, 452 U.S. at 717–18, 101 S.Ct. at 2601–02. Justice Stevens describes the Court's actions in these terms. *See Iacobucci*, 479 U.S. at 103, 107 S.Ct. at 389 (Stevens, J., dissenting). This view does not accurately describe the *LaRue* doctrine. *See* L. Tribe, *American Constitutional Law* § 6–25, at 478 n. 15 (2d ed. 1988). The Supreme Court approves of the regulation of nude and seminude dancing in taverns because the twenty-first amendment confers an added presumption in favor of the constitutionality of state authority over public health, welfare, and morals in the area of alcoholic beverage control and this presumption outweighs the minimal free speech interests in presenting nude and seminude dancing in the particular forum of the tavern. *LaRue*, 409 U.S. at 114, 93 S.Ct. at 395; *accord, Iacobucci*, 479 U.S. at 95, 107 S.Ct. at 385. This presumption cannot be confined to liquor having a particular state of origin. Indeed,

the ordinance at issue in *Iacobucci* did not so distinguish, *see Iacobucci v. Newport*, 785 F.2d 1354, 1360–62 (6th Cir.) (appendix setting forth text of challenged ordinance), *rev'd*, 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986), and neither have such distinctions been drawn in ordinances subsequently upheld by the Eleventh Circuit, *see Lanier v. City of Newton*, 842 F.2d 253 (11th Cir.1988); *Fillingim v. Boone*, 835 F.2d 1389 (11th Cir.1988); *International Food & Beverage Systems v. Fort Lauderdale*, 664 F.Supp. 482 (S.D.Fla.1987), *aff'd without opinion*, 838 F.2d 1220 (11th Cir.1988).

The regulation of the sale or use of liquor within a state's borders is the core of twenty-first amendment power, *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 713, 104 S.Ct. 2694, 2707, 81 L.Ed.2d 580 (1984), and therefore state power in this area is at its zenith vis-a-vis federal law and the Constitution, *see 324 Liquor Corp.*, 479 U.S. at 346–47, 107 S.Ct. at 726–27. Certainly, the "twenty-first amendment power over alcohol consumption is broad enough to embrace state power to zone strong sexual stimuli away from places where liquor is served," L. Tribe, *supra*, at 478 n. 15, without being forced to distinguish between domestic and imported alcohol.

## VI. STRUCTURE OF TWENTY–FIRST AMENDMENT

Following the counsel to focus primarily on the language of the twenty-first amendment, *Midcal Aluminum*, 445 U.S. at 106–07, 100 S.Ct. at 943–44, the Court must simply repeat what has already been stated. Repeal of the eighteenth amendment implies a return to case law developed prior to national prohibition. Broad power in the regulation of domestic alcohol may be inferred from those cases. Moreover, the state control over the transportation or importation of liquor in violation of state laws presupposes that broad power. "[S]uch control logically entails considerable regulatory power not strictly limited to importing and transporting alcohol." *Id.* at 107, 100 S.Ct. at 944.

In contrast, WDC's legal theory would require the Court divide state power into discrete units based on only four words in section 2—"transportation or importation into"—without proper consideration of the amendment as a whole. This would betray one of the oldest canons of constitutional constructions: "[A] sound construction of the whole article ... give[s] every part its intended effect.... [W]here it would destroy some of the most important objects for which the power was created; then, we think, affirmative words ought not to be construed negatively." *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 120, 177 (1821). This cannon figures prominently in the balancing approach set forth in *LaRue,* which holds that the first amendment and twenty-first amendment "each must be considered in the light of other, and in the context of the issues and interests at stake in any concrete case." *Hostetter v. Idlewild Liquor Corp.,* 377 U.S. 324, 332, 84 S.Ct. 1293, 1298, 12 L.Ed.2d 350 (1964), *quoted with approval in LaRue,* 409 U.S. at 115, 93 S.Ct. at 395. Crossing the short distance from the issue in *LaRue* to the issue in this case, the Court finds that proper construction of the language of the twenty-first amendment compels rejection of WDC's legal theory.

## VII. CONCLUSION

■ The Court has reviewed all the interpretational guides of which it is aware, and those guides unanimously reach the conclusion that the adult entertainment ordinance is entitled to the added presumption accorded by the twenty-first amendment, without regard for the state of origin of the liquor that WDC plans to serve. WDC concedes that it cannot successfully challenge the ordinance when this presumption is conferred upon it. Accordingly, it is

ORDERED AND ADJUDGED:

1. That plaintiff's Motion for Partial Summary Judgment is hereby denied;

2. That defendant's Motion for Summary Judgment is hereby granted; and

3. That the Clerk of the Court is directed to enter judgment in this case for defendant and against plaintiff with costs to be assessed according to law.

DONE AND ORDERED.